**NEATO, LLC, Plaintiff,**

v.

**ROCKY MOUNTAIN TRADERS and Stanley I. Grossman, Defendants.**

**CIV. No. 3:99CV00377(AVC).**

United States District Court, D. Connecticut.

March 27, 2001.

246

### RULING ON THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COVELLO, Chief Judge.

This is an action for declaratory relief brought by the plaintiff, Neato, LLC ("Neato") against the defendant, Rocky Mountain Traders ("RMT") and Stanley I. Grossman. In it, Neato asks the court to declare United States Patent No. 5,783,033 (" '033 patent") invalid, void and unenforceable. Neato brings the within motion for partial summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, arguing that the '033 patent is invalid because "in light of the relevant prior art, claims 1–4 ... were obvious within the meaning of 35 U.S.C. § 103(a)." [1]

The issues presented are: 1) whether components in an earlier patent constitutes prior art where those components serve different functions and different purposes than similar components utilized in the challenged patent; and 2) whether Neato has made a "clear and particular" showing

---

1. Title 35 of the United States Code, section 103(a) provides, in pertinent part, that "[a] patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).

that there existed some teaching, suggestion, or reason to combine multiple prior art references to reach the invention claimed in the '033 patent.

As set forth in more detail below, the court concludes that: 1) Neato has not established that the cited earlier patent constitutes relevant prior art because the evidence reveals that the challenged patent uses earlier conceived components for different purposes and functions; and 2) Neato has failed to make a "clear and particular" showing that there was some suggestion to combine multiple prior art references.

Accordingly, the motion for partial summary judgment (document no. 36) is DENIED.

### FACTS

Examination of the complaint, affidavits, pleadings, Rule 9(c) statements, exhibits and supplemental materials discloses the following material facts, which are undisputed unless otherwise noted.

### The Spannknebel Patent

In April 5, 1973, German patent no. 2 009 816 was issued to Walter Spannknebel ("Spannknebel patent"). The invention claimed in the Spannknebel patent describes an automated, assembly line machine for "applying labels onto audio-tape reels." The purpose of the device described in the Spannknebel patent was to "[1)] improve a labeling apparatus ... so that self-adhesive labels [could] be taken from a carrier tape and applied correctly relative to the printed text, in a predetermined position onto the object to be labeled, with high precision and speed, and [2)] to eliminate the tolerances which the labels show in their arrangement on the

carrier belt, which is caused by the manufacturing process."

The preferred embodiment of the invention claimed in the Spannknebel labeling apparatus discloses:[2]

[a] carrier belt [2] provided with adhesive labels [1] [that] moves from a supply roller [3] over a guide roller [4] to a return tongue [5] with a return edge [6].... From the return edge [6], the carrier belt [2] moves to a rewinding bobbin [7], on which the empty carrier belt [2] is wound. The return tongue [5] with its return edge [6] serves ... to remove the adhesive label [1] from the carrier belt, .... The labels [1] then project.... A pair of rollers is provided in the supply direction of the carrier belt just in front of the return tongue [5], to transport [the] carrier belt [2] and its adhering labels. This pair of rollers has a drive roller [8] at the upper side of the carrier belt, which is provided with labels, and a pressing roller [9] at the bottom side of carrier belt [2]. The drive roller is driven stepwise ... by means of a stepping motor [10].[The][p]ressing roller [9] presses carrier belt [2] with the adhering labels resiliently against drive roller [8]. Here, [the] pressing roller [9] is either positioned resiliently, or is provided with a resilient surface coating.

*See* Spannknebel Patent at 7, Exhibit 1, fig. 1.

What is "essential" in this invention "is that the label [1] is gripped and held by the label holder [18], and ... the object to be labeled stays in a defined position relative to the label holder." To ensure proper positioning, the Spannknebel device discloses a "label holder [18] which includes a

---

**2.** The bracketed numbers appearing throughout the court's ruling correspond to the numbers used in the drawings of the patents at issue in this case. These drawings are attached as exhibits to the court's ruling. *See* Exhibits 1–3.

body [29] to which a cover disk [34] and an annular disk [40] are attached. A shoulder [37] is received within the body [29] and is biased [downward] by a coiled spring [39] against a stop portion of the body [29]. A mandrel [35] extends from the shoulder [29], through the cover dis[k][34], and protrudes [below] the ... surface of the cover disk [34] for engagement with apertures in the labels and the reels." *See* Neato Mem. at 12–13; Exhibit 1, fig. 2.

The Spannknebel patent indicates that the label holder [18] works in conjunction with the entire automated labeling system in the following manner.

> [The] adhesive label [1] is largely removed from carrier belt [2] ... and is located directly beneath label holder [18].... [The] mandrel [35] penetrate[s] into the opening of adhesive label [1].... Since the adhesive labels are relatively resilient, an annular nozzle [49] is provided in the region of the bottom side of the glue-coated adhesive label, which is connected with a source of pressurized air by conduit [50]. Simultaneous with the penetration of mandrel [35] into label [1], a stream of air is ejected from annular nozzle [49], which brings the adhesive label with its top side into contact with the outer surface of cover disk [34]. The adhesive label adheres to mandrel [35] because of the presence of small particles of glue, which project into the cross-sectional plane of opening [11] [of the label]. The hold can be assisted by sucking out air through bores [46 and 47] so that the adhesive label [1] received by the label holder [18] can be held securely.... [T]he label holder stops its motion parallel to a motion towards the carrier plate surface, and then, simultaneously if necessary, plate [19] together with label holder [18] is lowered by actuating working cylinder [27] to a level such that the leading end of mandrel [35] engages the opening of audio tape reel [15] located in the labeling station.... [T]he label is transferred onto the upper surface of the [audiotape] reel by a blast of air, through bores [47 and 46]. The label is thus guided accurately by mandrel [35] and enters the precise predetermined position relative to the audiotape reel.

Spannknebel patent at p. 10. *See* Exhibit 1, figs. 1 and 2.

**The Casillo Patent**

On March 24, 1995, Neato's predecessor in interest filed a continuation-in-part patent application for a manually-operated, two-piece apparatus for accurately applying labels to compact discs. Subsequently, United States Patent No. 5,543,001 issued to Joseph Casillo, et al. for that labeling device ("Casillo patent"). The device claimed therein (the "Neato device") comprises the following structures:

> a positioning cone [300] with a cylindrical extension [310],
>
> a flat surface [320] with a diameter greater than that of the cylindrical extension [310], and a tapered end opposite the cylindrical extension [340],
>
> a positioning plate [500] having a central positioning hole [520], and a surface [510] upon which a self-adhesive label [400] can be placed, and
>
> a base [600] supporting the positioning plate [500], having a hollow space [640] below the positioning plate [500].

Casillo patent at Col. 10. *See* Exhibit 2, fig. 1.

When applying a self-adhesive label [400] to a compact disc [200] using the Neato device, one removes the releasable backing and places the label, adhesive side up, on the positioning plate [500]. Performing this step requires the operator to carefully align the center hole of the label [420] with the center hole of the position-

ing plate [520]. As noted in the '033 patent, this step "relies upon the skill and manual dexterity of the operator in order to achieve correct alignment of the label [400] and the compact disc [200]." *See* '033 patent at Col. 2. From there, one places the compact disc [200], data-side up, on the positioning cone [300] so that it rests on the step [320] formed by the cylindrical extension [310] (which extends from the body of the cone). At this point, one places the cone [300] in a "first position" where the cylindrical extension [310] and a portion of the cone's body [300] extend above the surface [510] of the positioning plate [500]. Then, one inserts the cone through the center holes of both the label [430] and the positioning plate [520] to a second position where the body of the cone [300] is level with or below the positioning plate [500]. This movement causes the compact disc [200] to come into contact with the label [400]. *See* Casillo patent at Cols. 4, 9.

### Problems with the Neato Device

In September 1995, the defendant, Stanley Grossman, began distributing the Neato device through RMT. In the course of these distribution efforts, RMT alleges, Grossman identified the following three problems with the Neato device: 1) the difficulty of applying a label that had curled upward after its releasable backing has been peeled away in the event that the operator was not holding the label in place; 2) the tendency of the label to stick to the operator's fingers and move off-center when the operator attempted to withdraw his fingers from the label;[3] and 3) the difficulty that the operator experienced, when inserting the conical member [300] into the common hole of the label [430] and the positioning plate [520], in attaining the correct angle so as to avoid misalignment of the label on the compact disc.

### The '033 Patent

In December 1995, Grossman invented a device and a method for labeling compact discs that RMT maintains solved the problems identified in the Neato device. Grossman's invention, RMT maintains, "permits reliable alignment of the label and the compact disc, and substantially eliminates the opportunity for operator error." *See* '033 patent at Col. 2.

On February 26, 1996, Grossman filed a patent application in the United Kingdom for the device he had invented, and it was assigned UK Patent Application No. 9604048. Subsequently, United States Patent No. 5,783,033 (" '033 patent") issued to Grossman.

The purpose of the invention claimed in the '033 patent was to provide a device that: 1) overcame the problems Grossman identified with the Neato device; 2) was inexpensive to produce and manually operable; 3) "permit[ted] reliable alignment of the label and the compact disc;" and 4) "substantially eliminate[d] the opportunity for operator error." Specifically, the '033 patent claimed a unitary device for "applying a first substantially planar member [ (the label) ] having a central aperture of a first diameter to a second substantially planar member [ (the compact disc) ] hav-

---

**3.** *See* '033 Patent ("It will be appreciated that [the Casillo device] therefore relies upon the skill and manual dexterity of the operator in order to achieve correct alignment of the label and the [compact disc]."). The '033 patent discloses the importance that Grossman placed on the centering and alignment of the compact disc and label in Grossman's invention. "It is essential that the label be affixed in such a way that the overall balance of the [compact disc] is not adversely affected. In particular, it is necessary that the center of balance of the compact disc remains about its geometric center. Labels which are not concentrically affixed to the [compact disc's] ... have previously caused malfunctions and often rendered the [compact discs] virtually useless."

ing a central aperture of a second diameter, wherein the first diameter is greater than the second diameter[.]" As described in the '033 patent itself, the device comprises:

> a circumferential flange [7] with an upper surface capable of supporting the first planar member [ (the label) ];
>
> a piston member [5] having a top surface and a lower surface;
>
> a first rod [4] having a diameter slightly less than the first diameter, extending from the top surface of said piston [5];
>
> a second rod [3] having a diameter slightly less than the second diameter, extending from the first rod [4]; and
>
> a tube [8] having an upper end, a lower end, and a spring [11] that cooperates with said lower surface [9], said circumferential flange [7] extending from said upper end of said tube [8].
>
> wherein said piston [5] is slidably received in said tube [8] and is adapted to move from a first position in which said second rod [3] and at least a portion of said first rod [4] extend above said upper surface to a second position in which at least said first rod [4] is entirely below or is level with said upper surface.

'033 patent at Col. 6. *See* Exhibit 3, fig. 2.

The tube [8] is attached to the circumferential flange [7] on the top and a plate [9] on the bottom. The piston [5] slides up and down inside the tube [8]. The spring [11] is biased upward against the piston [5]. In conjunction with the piston [5], the spring [11] enables the first and second rods [4, 3] to extend upward from the circumferential flange [7]. When placing the label [2] on the flange [7], the operator slides the label [2] over the two rods [4, 3], with the adhesive side facing upward, and rests it on the flange [7]. Because the first rod [4] has a diameter similar to the diameter of the center hole of the disc label, once the user places the label [2] on the

flange [7], the label [2] is "retained in a position on the flange [7] by means of the first rod [4] extending through [the label's hole]." *See* '33 patent at Col. 2–3. Similarly, because the second rod [3] has a diameter similar to the diameter of the center hole of the compact disc itself, the compact disc is retained in its position. *Id.* at Col. 3.

RMT and Grossman maintain that, as a result of the compact disc and the label being held in place by the two rods, the device disclosed in the '033 patent assures that the label is properly centered on the compact disc without relying on the skill or dexterity of the operator. They also contend that this device solved the problem of label curl because the first and second rods prevented the label from curling onto itself. On the other hand, Neato maintains that the device claimed in the Casillo patent "teaches one skilled in the art how to reduce the tendency of labels to curl." Neato adds that the problem of removing once's fingers from the label and aligning the manually operated cone with the label and positioning hole are both solved by "mounting the manually operated cone [300] to the plate [500] and cylindrical base [600]."

On March 3, 1999, Neato commenced this action against RMT and Grossman, alleging that the '033 patent "is limited in scope, . . . invalid and void[.]"

### STANDARD

Summary judgment is as appropriate in a patent case is it is in any other matter. *See Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd.,* 731 F.2d 831, 835 (Fed.Cir.1984). Thus, the moving party shoulders the burden of establishing that there are no genuine issues of material fact in dispute, and that it is entitled to judgment as a matter of law. *See* Fed.

R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). In ruling on a motion for summary judgment, the court is required to resolve "all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Id.* Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991).

In addition, the court must consider the substantive standard for the burden of proof in deciding this motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[An] issued patent carries a presumption of validity." *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356 (Fed.Cir.1999) (citing 35 U.S.C. § 282). "This presumption is manifested by the requirement that one who seeks to invalidate [the] patent [must] do so by clear and convincing evidence." *Id.*

### DISCUSSION

### OBVIOUSNESS

Neato argues that the '033 patent is invalid because, in light of the Spannknebel and Casillo patents, the invention claimed in the '033 patent was obvious at the time it was made. RMT and Grossman dispute this assertion, contending that: 1) the Spannknebel patent does not

constitute relevant prior art for the purpose of the obviousness analysis; and 2) Neato has failed to make a clear and particular showing of a suggestion to combine the references in the Spannknebel and Casillo patents to reach the invention claimed in the '033 patent.

■ Title 35 of the United States Code, section 103(a) provides, in pertinent part, that "[a] patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). "In order to determine obviousness as a legal matter, four factual inquiries must be made concerning: 1) the scope and content of the prior art; 2) the level of ordinary skill in the art; 3) the differences between the claimed invention and the prior art; and 4) secondary considerations of nonobviousness[.]" *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662 (Fed. Cir.2000) (citing *Graham v. John Deere, Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)).

### A. *Level of Ordinary Skill in the Art*

Neato briefly addresses this factor. It defines a person of ordinary skill in the art as someone "who is skilled in making and designing basic mechanical devices." Neato bases its definition solely upon the testimony of RMT's technical expert in a related action pending in the United Kingdom, in which the expert stated that a person of ordinary skill in the art is "the sort of person who might be familiar with small mechanical devices and the design of them." In response, RMT and Grossman argue that Neato has "presented no rele-

vant evidence of the level of ordinary skill in the art under [United States] law[.]"

The party asserting obviousness has the burden of proof on the issue of the level of ordinary skill in the art. *TWM Mfg. Co., Inc. v. Dura Corp.*, 722 F.2d 1261, 1266 (6th Cir.1983). "Factors that may be considered in determining the ordinary level of skill in the art include: 1) the types of problems encountered in the art; 2) the prior art solutions to those problems; 3) the rapidity with which innovations are made; 4) the sophistication of the technology; and 5) the educational level of active workers in the field." *Ruiz v. A.B. Chance, Co.*, 234 F.3d 654, 666–67 (Fed.Cir.2000).

Neither Neato, who has the burden, nor RMT has come forward with evidence addressing any of the five factors that inform this determination. Contrary to Neato's contention, the testimony of RMT's expert in the related UK action under UK patent law, while relevant, is by no means conclusive. However, "[t]here is no evidence in the record from which [this court] could reasonably infer that a higher level of skill would be more favorable to [Neato]." *Estate of Stoller v. Ford Motor Co.*, 784 F.Supp. 506, 517 (N.D.Ill.1992). Hence, the court will assume for the purposes of this motion that a person of ordinary skill in the art is "one skilled in making and designing basic mechanical devices."

## B. *Scope and Content of the Prior Art/Differences Between Claimed Invention and Prior Art*

### 1. Relevant Prior Art

With respect to the scope and content of prior art Neato argues that "[t]he combination of the Casillo patent and the Spannknebel patent teach all of the claim limitations of the Grossman patent." RMT and Grossman respond, in the first instance, by noting that Grossman cited the Casillo patent in his application to the Patent and Trademark Office, which issued the '033 patent in spite of it. They also argue that the Spannknebel patent does not constitute "relevant prior art" because: 1) the Spannknebel patent is in a different field than the '033 patent, 2) the Spannknebel patent addresses different problems than the '033 patent; and 3) the element of the Spannknebel patent on which Neato focuses—the label holder [18]—has a function and purpose in the '033 patent that is different from the function and purpose it serves in the Spannknebel patent.

Courts use two criteria to determine whether prior art is relevant for the purposes of the obviousness analysis: "(1) whether the art is from the same field of endeavor ..., and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved." *In re Clay*, 966 F.2d 656, 658–59 (Fed.Cir. 1992). With respect to the second criterion, "[a] reference is reasonably pertinent if ... it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem." *Id.* Making this determination requires the court to examine the purposes of both the invention and the prior art. *See id.* "A change of function for a well known element of a combination patent is a benchmark of nonobviousness." *Shackelton v. J. Kaufman Iron Works, Inc.*, 689 F.2d 334, 339 (2d Cir.1982). Where the challenged invention is directed to a different purpose than the prior art, the inventor would have been less motivated to consider the prior art thereby militating against a conclusion that such prior art is analogous. *See In re Clay*, 966 F.2d 656, 658–59 (Fed.Cir.1992).

In *Shackelton v. J. Kaufman Iron Works, Inc.*, 689 F.2d 334 (2d Cir.1982), the Second Circuit addressed the validity of a patent for a "burglar proof window grill" comprising two clasps which fit into a latch post when closed. *See id.* at 339. "The purpose of the device was to prevent illegal entry into an apartment through the window while also providing for quick egress in case of an emergency." *Id.* The court acknowledged that earlier-conceived devices, like the gym locker, "suggest[ed] a vertical post that lock[ed] a door with pins descending into receiving slots." *Id.* Despite this earlier suggestion, the second circuit reversed the district court's finding of obviousness, relying on the differences between the function of a gym locker and the function of the burglar proof window grill. *See id.* at 339. Specifically, the court concluded that "[i]t [was] unlikely ... that it is the function of [a gym locker] not only to prevent ingress from without the gym locker, but also to allow egress from within the locker."[4] *Id.* The *Shackelton* court concluded that the inventor had "devised a new function for [the] latches," noting that:

> [t]he functions of these devices were radically altered and even in part inverted by application of their functional use in a different field from the fields [in which] each had been designed to function.... Even if ... each of the elements cited was already known in the art of "gate-making" ... here they are put to new functions in a nonobvious manner.

*Shackelton v. J. Kaufman Iron Works, Inc.*, 689 F.2d 334, 339 (2d Cir.1982).

■ The court concludes that Neato has failed to present evidence sufficient to establish that the Spannknebel patent is rel-

evant prior art. First, Neato argues that the Spannknebel and '033 patents fall within the same field of endeavor because they both deal with labeling. While it is true that both patents address similar subject matter, the federal circuit has acknowledged that parties cannot circumvent the requirement of showing the relevance of prior art by defining the field of endeavor in such a broad manner. *Cf. Wang Labs., Inc. v. Toshiba*, 993 F.2d 858, 864 (Fed. Cir.1993) (observing that prior art does not fall within the same field of endeavor as challenged patent simply because both relate to computer memory); *Shackelton v. J. Kaufman Iron Works, Inc.*, 689 F.2d 334, 339 (2d Cir.1982) (rejecting obviousness argument despite fact that elements used in prior art and challenged patent were long known in art of "gate-making").

Also, Neato's argument regarding the field of endeavor fails to address the notable differences between the Spannknebel patent and the '033 patent. For instance, while the '033 patent deals with a manually-operated compact disc labeler focused on consumer application of a single label to a single compact disc, the Spannknebel patent discloses an involved, automated, assembly line labeling system for audio tapes. The portion of the Spannknebel patent that Neato focuses on as prior art—the mandrel [35], mounted on the shoulder [37], the extension [38], and the helical spring [39]—is only one small part of the more complex, automated system. Also, these elements, which are all encased within the label holder [18], are presented in a distorted orientation by Neato. When viewing the label holder [18] within the scheme described in the Spannknebel patent, the mandrel [35], shoulder [37], extension [38], and helical spring [39] actually

---

4. The court made this determination after noting that the need for egress from a gym locker was nonexistent because "generally one cannot fit within a gym locker." *See Shackelton v. J. Kaufman Iron Works, Inc.*, 689 F.2d 334, 339 (2d Cir.1982).

face in a downward direction whereas the piston component of the '033 patent is biased upward by a spring. *See Shackelton v. J. Kaufman Iron Works, Inc.*, 689 F.2d 334, 339 (2d Cir.1982) (reversing obviousness finding where, even though challenged device and prior art both concerned "gate-making," elements as used in challenged patent were "radically altered," and partly "inverted" in its new function in the challenged patent).

Second, as noted above, prior art can also be considered relevant where "the reference is reasonably pertinent to the particular problem with which the inventor [was] involved." *In re Clay*, 966 F.2d 656, 658–59 (Fed.Cir.1992). With respect to this criterion, Neato urges the court to use "common sense" to conclude that a person of ordinary skill in the art would look to the Spannknebel patent for a solution to the problem facing Grossman at the time he developed the idea for the '033 patent. Accepting Neato's invitation, however, the court cannot conclude that common sense would lead an inventor seeking to design a manually-operable compact disc labeling device, geared towards consumer use, to look to the automated, assembly line machine referenced in the Spannknebel patent.[5] The Spannknebel device, as a whole, comprises elements one would not normally expect to find in manual devices, including: 1) a carrier belt for the labels [2], 2) a carrier belt for the audio reels [17], 3) a return edge to remove the labels [6], 4) an "annular nozzle [49]," which works in conjunction with the mandrel and "eject[s]" a "stream of air" to bring the label [1] in contact with the cover disk [34]; 5) a conduit for pressurized air [50]; and 6) "bores [46 and 47]" through which air is sucked upward so that the label [1] can be securely held to the label holder [18]. The different and distinct nature and application of the Spannknebel device as a whole (and the label holder [18] in particular) militates against the court concluding that the references disclosed in the Spannknebel patent were reasonably pertinent to the particular problems Grossman faced in developing "an inexpensive, manually-operated device that permitted reliable alignment of the label on the compact and substantially eliminated the opportunity for operator error."

Third, the federal circuit has acknowledged that "the purposes of both the invention and the prior art are important in determining whether the reference is reasonably pertinent to the problem the invention attempts to solve." *In re Clay*, 966 F.2d 656, 659 (Fed.Cir.1992). Here, the '033 patent uses the spring-loaded piston for a different purpose than the Spannknebel device uses the combination of the mandrel [35], the cylindrical extension [38], the helical spring [39], and the shoulder [37]. The spring-loaded piston in the '033 patent ensures that the label is concentrically aligned with the compact disc thereby seeking to eliminate the possibility that errors in label application caused by the lack of "skill and manual dexterity of the operator" do not effect an imbalance in the compact disc. Any imbalance could potentially alter the reading of the compact disc as it rotates at high speeds.

The Spannknebel patent, on the other hand, discloses a different purpose for employing the combination of the mandrel's cylindrical section [38], helical spring [39],

---

5. The court finds it significant that in one portion of its brief, Neato defines a person of ordinary skill in the art as "a person who is skilled in making and designing basic mechanical devices" while pages later it argues that Grossman—a person of ordinary skill in the art—should have looked to the complex, automated Spannknebel device for a solution to the problems facing him.

and shoulder [37]. This is not surprising because, in light of the different manner in which audiotapes and compact discs are read or played, the concentric alignment (and, consequently, the perfect balancing) of a label on an audio reel is not as critical as concentric alignment is on a compact disc.[6] The Spannknebel apparatus was concerned with applying labels "correctly relative to the printed text, in a predetermined position, onto the object to be labeled, with high precision and speed[.]" It also sought to "eliminate the tolerances which the labels show in their arrangement on the carrier belt, which [tolerances] [are] caused by the manufacturing process." Against this background, the '033 patent employed previously conceived devices "to arrive at a new solution to a new problem." *Shackelton v. J. Kaufman Iron Works, Inc.,* 689 F.2d 334, 339 (2d Cir.1982). Like the challenged burglar-proof grill in *Shackelton,* the '033 device uses old elements (the mandrel [25] the cylindrical section [38], the helical spring [39], and the shoulder [37] ) in a new manner (facing upward without any guides, annular nozzles, or pressurized air source) for a new purpose (to achieve the perfect balance of the label on the compact disc) to solve a new problem (imbalanced labels which resulted in unreadable compact discs). In light of the apparent need for the compact disc labels to be affixed in such a perfectly balanced manner to the compact disc itself, the court concludes that the spring-loaded piston, as used by Grossman in the '033 patent, was directed at a different purpose than it was in the Spannknebel device. Consequently,

Grossman had "less motivation ... to consider it." *In re Clay,* 966 F.2d 656, 659 (2d Cir.1992).

## 2. Suggestion to Combine [7]

Neato concedes that no single piece of prior art renders the '033 patent obvious. It argues that "claims 1–4 of the ['033 patent] may be found obvious to a person of ordinary skill in the art of labeling devices based upon the *combination* of [the Casillo and Spannknebel patents]." *See* Neato Mem. at 13 (emphasis added). Specifically, Neato contends that the Casillo patent "teaches every limitation of the invention in the ['033 patent] *except* for the obvious modification of resiliently mounting the manually operated cone [300] to the plate [500] and cylindrical base [600]." *See* Neato Mem. at 11 (emphasis added). The Spannknebel patent, Neato argues, suggests this modification. Neato adds that a person of ordinary skill in the art would have recognized that to move the cone [300] in the Neato device from the first position to the second position, "the cone could be resiliently mounted to the plate [500] and the cylindrical base [600] by using ... a spring loaded piston." RMT and Grossman respond that Neato fails to cite any "explicit suggestion in either the Casillo [p]atent or the Spannknebel [p]atent to combine those references to reach the invention claimed in the '033 patent."

"When an obviousness determination is based on multiple prior art references, there must be a showing of some

---

6. *See* '033 patent, col. 1, lines 50–55 ("Because of the high speed at which the compact disc must be spun, it is essential that the label be affixed in such a way that the overall balance of the disc is not adversely affected. In particular, it is necessary that the center of balance of the disc remains about its geometric center.").

7. The federal circuit has treated the suggestion to combine issue as part of the inquiry regarding the scope and content of prior art. *See Monarch Knitting Mach. Corp. v. Sulzer Morat Gmbh,* 139 F.3d 877, 881–83 (Fed.Cir. 1998).

'teaching, suggestion, or reason to combine the references.'" *Winner Int'l Royalty Corp. v. Wang,* 202 F.3d 1340, 1348 (Fed. Cir.2000); *see also Arkie Lures, Inc. v. Gene Larew Tackle, Inc.,* 119 F.3d 953, 957 (Fed.Cir.1997) ("It is insufficient to establish obviousness that the separate elements of the invention existed in the prior art, absent some teaching ... to combine the elements."). A court may find the "teaching, suggestion, or reason" to combine "either implicitly or explicitly: 1) in the prior art references themselves; 2) in the knowledge of those of ordinary skill in the art that certain references, or disclosures in these references, are of special interest or importance in the field; or 3) from the nature of the problem to be solved, leading inventors to look to references relating to possible solutions to that problem." *Ruiz v. A.B. Chance Co.,* 234 F.3d 654, 664 (Fed.Cir.2000) (internal citation and quotation marks omitted). While the references need not expressly teach that the disclosures contained therein should be combined with another, the showing of combinability must be "clear and particular." *In re Dembiczak,* 175 F.3d 994, 999 (Fed.Cir.1999) *abrogated on other grounds by In re Gartside,* 203 F.3d 1305, 53 USPQ2d 1769 (Fed.Cir.2000). A court reviewing an obviousness challenge predicated upon a combination of prior art references must be sure to take the "critical step of casting [its] mind back to the time of invention, to consider the thinking of one of ordinary skill in the art, guided only by the prior art references and the then-accepted wisdom in the field." *In re Dembiczak,* 175 F.3d 994, 999 (Fed.Cir. 1999). "The absence of ... a suggestion to combine is dispositive in an obviousness determination." *Gambro Lundia AB v. Baxter Healthcare Corp.,* 110 F.3d 1573, 1579 (Fed.Cir.1997).

### a. Nature of the Problem to be Solved/Prior Art References

█ Neato first argues that the suggestion to combine the references in the Spannknebel and Casillo patents arises from the nature of the problems to be solved in the Casillo patent. To this end, Neato cites the problems Grossman identified with the Casillo device:

1) the difficulty of applying a label [400] that has curled upward after its releasable backing has been peeled away;

2) the difficulty of removing one's fingers from a label [400] after placing it on the positioning plate [500]; and

3) the difficulty of aligning the manually operated cone [300] with the label [400] and the positioning hole [520], which could result in the de-centering of the label on the compact disc.

From this point, Neato's argument is as follows. The solution to the first problem—the curling labels—"is primarily a problem with the handling of [the] labels (as opposed to the Casillo device itself) and the solution was already taught by the Casillo patent[.]" The Spannknebel patent solves the second problem—the removal of one's fingers from the label—"by disclosing a mandrel [35] mounted to a body [29] to facilitate maintaining the position of the label on the body [29] after [the label] has been located thereon[.]" The solution to the third problem—the difficulty of aligning the manually operated cone [300] with the label [400] and the positioning hole [520]—"was basically solved by the obvious solution to the second problem as taught by Spannknebel," namely the mounting of the cone [300] to the positioning plate [500] and the cylindrical base [600].

Neato's theory with respect to the nature of the problem to be solved rings of the hindsight analysis that the federal circuit and other courts have repeatedly criticized. *See In re Dembiczak,* 175 F.3d 994,

999 (Fed.Cir.1999) (warning against "the insidious effect of a hindsight syndrome wherein that which only the inventor taught is used against its teacher[ ]"); *Medtronic, Inc. v. Daig Corp.*, 611 F.Supp. 1498, 1534 (D.Minn.1985), *aff'd*, 789 F.2d 903 (Fed.Cir.1986) (warning against using "patent in suit as a guide through the morass of prior art references, combining the right references in the right way to arrive at the result of the claims in suit[ ]"). Neato's argument, as outlined above, demonstrates only that these (alleged) solutions would have been obvious to one of ordinary skill in the art only after discovering the Spannknebel patent in his or her search for answers. *See Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1138 (Fed.Cir.1985) ("The invention must be viewed not with the blueprint drawn by the inventor, but in the state of the art that existed at the time."); *Orthopedic Equip. Co. v. United States*, 702 F.2d 1005, 1012 (Fed.Cir.1983) ("It is wrong to use the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve [a desired result].")." Even assuming that the Spannknebel and Casillo patents teach solutions to the three problems Grossman identified, at most, Neato has shown that the two patents *separately* present solutions to problems inherent in the Casillo device.[8] As noted above, such

a showing is insufficient to carry Neato's burden on this issue. *See Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed.Cir.1997) ("It is insufficient to establish obviousness that the separate elements of the invention existed in the prior art, absent some teaching ... to combine the elements.").

### b. Knowledge of those of ordinary skill that certain references are of special interest or importance in the field

Neato fails to set forth facts sufficient to make a "clear and particular" showing of the suggestion to combine the Spannknebel and Casillo patents. Instead, it summarily concludes that someone endeavoring to solve the Neato device's alignment problems would have known to use a "spring-loaded piston[9] for resiliently mounting a centering element to a discholder" because this modification "was well known in this field of endeavor on the priority date of the Grossman patent." Neato's argument in this regard skips the critical step of specifically articulating how or why one of ordinary skill in the art would have known to combine the spring biased piston disclosed in the Spannknebel patent with the prior art of the Casillo patent in order to obtain the invention claimed in the '033 patent. *See Smiths*

---

**8.** Throughout its brief, Neato refers to a "Detailed Limitation–By–Limitation Comparison" prepared by its attorneys and attached as an exhibit. In that chart, Neato separately compares each claim of the '033 patent with disclosures from the Casillo and Spannknebel patents in an effort to show that "each and every limitation claimed in the ['033 patent] [is] disclosed in the Casillo and Spannknebel patents." The federal circuit has rejected this approach where, as here, the party's obviousness challenge is predicated on multiple prior art references, and no suggestion to combine is present. *See In re Dembiczak*, 175 F.3d 994, 1000 (Fed.Cir.1999) (noting that a "ref-

erence-by-reference, limitation-by-limitation analysis fails to demonstrate how the [prior art] references teach or suggest their combination ... to yield the claimed invention[ ]").

**9.** The "spring-loaded piston" and "centering element" to which Neato refers in its argument correspond to the helical spring [39], the shoulder [37], the mandrel [35], and the extension [38] encased in the label holder [18] of the Spannknebel. Under Neato's theory, these structures correspond to the spring [11], the piston [9], and the first and second rods [4, 3] in the '033 patent.

*Indus. Med. Sys., Inc. v. Vital Signs, Inc.,* 183 F.3d 1347, 1356–57 (Fed.Cir.1999) (reversing district court's obviousness conclusion noting that the party charging obviousness had "failed … to establish *why* one of ordinary skill would have found it obvious to combine the numerous claim limitations in a particular way to achieve the [challenged] invention.") (emphasis added).

Indicative of the conclusory nature of its argument on this point is Neato's failure to cite to supporting facts in the record. Neato does refer to the testimony of an RMT expert in the related UK action in which the expert "agreed that using a spring as a method for resiliently attaching a piston was an obvious thing to do." A review of the expert's testimony in this regard, however, reveals that he agreed only that "the use of springs to take devices away from the configuration they were resting at and put them back where they were" was part of a "mental tool kit" of a person who might be familiar with small mechanical devices and their design. The expert *did not* testify that it would be obvious to *combine* the references of the Casillo patent—the manually operated cone [300], the positioning plate [500] and the cylindrical base [600]—with the spring-loaded piston in order to resiliently mount the cone [300] to the plate [500]. As the federal circuit has reminded us, an invention is not obvious solely because it is made up of two or more elements contained in separate prior patents. *See Panduit Corp. v. Dennison Mfg. Co.,* 810 F.2d 1561, 1575 (Fed.Cir.1987) ("[t]he notion … that combination claims can be declared invalid merely upon finding similar elements in separate prior patents would necessarily destroy all patents and cannot be the law under [35 U.S.C. § 103]"). It is the fear of this result in which the rigorous requirement of a "clear and particular" showing of the suggestion to combine is grounded. *See In re Dembiczak,* 175 F.3d 994, 999 (Fed.Cir.1999) ("Our case law makes clear that the best defense against the subtle but powerful attraction of a hindsight-based obviousness analysis is rigorous application of the requirement for a showing of the teaching or motivation to combine prior art references.").

In a final attempt to clear the hurdle posed by the requirement that a party make a "clear and particular" showing of the suggestion to combine, Neato argues that prior art references do not need to actually suggest, expressly or in so many words, the changes made. "[A]ll that is required to show obviousness[,]" Neato argues, "is that Grossman made his claimed invention by merely applying knowledge clearly present in prior art." The federal circuit, however, disagrees and so must this court. *See Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.,* 183 F.3d 1347, 1356–57 (Fed.Cir.1999) (reversing district court's obviousness conclusion noting that the party charging obviousness had failed "to establish *why* one of ordinary skill would have found it obvious to combine the numerous claim limitations in a particular way to achieve the [challenged] invention").

The court concludes that, based on the evidence presented at this stage of the proceedings, Neato has not made a clear and particular showing of a suggestion to combine the Spannknebel and Casillo patents to achieve the invention claimed in the '033 patent. "The absence of … a suggestion to combine is dispositive in an obviousness determination." *Gambro Lundia AB v. Baxter Healthcare Corp.,* 110 F.3d 1573, 1578–79 (Fed.Cir.1997). *See Winner Int'l Royalty Corp. v. Wang,* 202 F.3d 1340, 1350 (Fed.Cir.2000) ("If there was no motivation to … combine [multiple prior art references], one of ordinary skill in the art would not have viewed

the invention of the [challenged patent] as obvious."); *Monarch Knitting Mach. Corp. v. Sulzer Morat Gmbh,* 139 F.3d 877, 882–83 (Fed.Cir.1998) (noting that where there exists genuine issues of fact as to whether one of ordinary skill in art would have been motivated to combine references in question, summary judgment as to obviousness challenge is inappropriate).

### C. *Objective Indicia of Nonobviousness*

"Objective indicia of nonobviousness includes commercial success, longfelt but unresolved need, failure of others, and copying." *Custom Accessories, Inc. v. Jeffrey–Allan Indus.,* 807 F.2d 955, 960 (Fed.Cir. 1986). "Such evidence may often establish that an invention appearing to have been obvious in light of the prior art was not." *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538 (Fed.Cir.1983). Here, there is no need to address this evidence as, based on the other factors informing the obviousness determination, the court concludes that Neato has not met its initial burden of establishing that the '033 patent was obvious in light of prior art. *See Winner Int'l Royalty Corp. v. Wang,* 202 F.3d 1340, 1350 (Fed.Cir.2000) (holding that because party challenging validity of patent was not able to establish prima facie case of obviousness, patentee was not required to establish commercial success); *Quantachrome Corp. v. Micromeritics Instrument Corp.,* 97 F.Supp.2d 1181, 1191 (S.D.Fla.2000) ("[Objective] evidence of nonobviousness is not, of course, a requirement for a finding of nonobviousness . . . .").

### D. *Has Neato Established that the '033 Patent is Obvious?*

Based on the evidence presented at this stage of the proceedings, the court concludes Neato has not carried its burden of proving by clear and convincing evidence that the '033 patent would have been obvious to one of ordinary skill in the art at the time of its invention.

### CONCLUSION

Based on the foregoing, Neato's motion for partial summary judgment (document no. 36) is DENIED.