NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1044

OMEGAFLEX, INC.,

Plaintiff-Appellee,

v.

PARKER-HANNIFIN CORPORATION,

Defendant-Appellant

Steven M. Coyle, Cantor Colburn LLP, of Bloomfield, Connecticut, argued for plaintiff-appellee. Of counsel were Chad Dever and Charles F. O'Brien.

Rudolf E. Hutz, Connolly Bove Lodge & Hutz LLP, of Wilmington, Delaware, argued for defendant-appellant. With him on the brief was Harold Pezzner.

Appealed from: United States District Court for the District of Massachusetts

Judge Michael A. Ponsor

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1044

OMEGAFLEX, INC.,

Plaintiff-Appellee,

v.

PARKER-HANNIFIN CORPORATION,

Defendant-Appellant.

_____

DECIDED:  June 18, 2007

_____

Before MICHEL, Chief Judge, DYK, Circuit Judge, and GARBIS, [*] Senior District Judge.

MICHEL, Chief Judge.

Defendant-Appellant Parker-Hannifin Corporation ("Parker") appeals from grants of summary judgment of infringement and patent validity, and issuance of a permanent injunction by the United States District Court for the District of Massachusetts in OmegaFlex, Inc. v. Parker-Hannifin Corp., No. 02-cv-30022 (D. Mass. Mar. 31, 2006). Because Parker's evidence established genuine issues of material fact, we reverse the grants of summary judgment, vacate the injunction, and remand for trial.

_____

[*]    Honorable Marvin J. Garbis, Senior District Judge, United States District Court for the District of Maryland, sitting by designation.

## I.    BACKGROUND

Plaintiff OmegaFlex, Inc. ("OFI") is the owner of U.S. Patent Nos. 6,079,749 ("'749 patent") and 6,428,052 ("'052 patent"), both of which relate to pipe fitting technology.  The claimed fittings are primarily designed to be used with corrugated stainless steel tubing ("CSST"), a type of flexible piping that is commonly used to carry natural gas.  As such, it is critical that these fittings, when mated with pipes, form a leak-free seal.

OFI's asserted patents crucially also claim the incorporation of a "locating sleeve" into the fitting, as shown below in Fig. 1:



Figure 1

In order to achieve a leak-free seal, a pipe must be properly aligned in relation to the fitting; misalignment results in a poor seal and potential leakage of gas.  Proper alignment is only difficult to achieve in certain circumstances, such as when the pipe and fitting are being used in hard-to-reach areas or tight spaces, or when the pipes being used are of poor quality.  Such circumstances, however, are commonly encountered in the field.  The locating sleeve in OFI's patents acts as a pipe guide that ensures proper alignment even when working in these situations.  OFI markets and sells its AutoFlare line of fittings that practice the '749 and '052 patents.

Parker is a competitor of OFI, and it markets and sells its FastMate line of fittings that compete with OFI's AutoFlare fittings. One advantage shared by both Parker's FastMate and OFI's AutoFlare fittings is that both are capable of being attached to pipes without the use of special tools or materials to form a leak-free metal-to-metal seal. Previous conventional fittings required the use of a flare tool, which was a more cumbersome and complex process. But the FastMate fittings originally lacked locating sleeves, or any other alignment aid, and Parker was eventually forced to recall them due to customers experiencing alignment problems. Parker then re-released the FastMate fitting with a locating sleeve. OFI alleges that these re-released FastMate fittings infringe its '749 and '052 patents.[1]

Parker alleges that both of the asserted patents are obvious in light of its U.S. Patent No. 6,036,237 ("Sweeney patent") in combination with a product sold by Parker called the Parker Compression Fitting ("PCF").[2] It is undisputed that the Sweeney patent discloses every element of the asserted patents except the locating sleeve, and that Parker's FastMate fitting practices the Sweeney patent. The PCF does not have an integrated locating sleeve but is sold with an option to insert a locating sleeve when an aid for proper alignment is wanted. The PCF is not used with CSST but is used with other kinds of metal piping.

The district court held that nothing in the Sweeney patent "suggests achieving proper alignment might prove problematic," and that a skilled artisan would see no

---

[1] The district court granted summary judgment of infringement for OFI. Parker does not appeal this aspect of the district court's judgment. Nor does Parker appeal the district court's denial of its own motion for summary judgment of invalidity.
[2] OFI does not dispute that either of these constitute prior art for the purposes of obviousness. Parker does not now rely on U.S. Patent No. 5,292,156 as a prior art reference as it did before the district court.

reason to "improve the alignment capabilities of an invention that purported to effectuate a leak-tight seal," thus no motivation to combine the Sweeney patent with the PCF existed. While the PCF and its marketing does contemplate alignment problems, the district court held that "a skilled artisan would not have been motivated to add [the PCF's locating sleeve] to [the Sweeney patent's fitting] that refused to recognize the possibility of an alignment problem."

The district court further held that a person of ordinary skill would not have perceived a reasonable expectation of success in adding the PCF's locating sleeve to the Sweeney patent's fitting. The basis for this finding was that Parker's engineers had considered adding a locating sleeve to the original FastMate fitting but concluded that doing so might impede the flow of gas through the fitting and thus compromise performance, as well as costing more.

Finally, the district court held that objective indicia of obviousness weigh in favor of non-obviousness. First, the district court held that there was skepticism among artisans that the locating sleeve would be a valuable addition to the Sweeney fitting, citing the same evidence as for the lack of a reasonable expectation of success. Second, the district court held that the fact that the FastMate fitting was ultimately modified to include a locating sleeve like that of OFI's AutoFlare fittings, and as taught by the asserted patents, "debilitated" Parker's defense of obviousness. Finally, the district court held that the invention of the asserted patents had fulfilled a long-felt need, citing as evidence a letter sent to OFI by a distributor, Arthur Weirauch, who lauded OFI's AutoFlare fitting as a breakthrough. Specifically, Weirauch wrote that the

AutoFlare fitting's ability to establish a good metal-to-metal seal without the use of special tools was "what has been needed since the very beginning."

As a result, the district court granted OFI's summary judgment motions of infringement and validity while denying Parker's summary judgment motion of invalidity. The district court also issued a permanent injunction against Parker. Parker then timely filed this appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

We review a district court's grant of summary judgment de novo. Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998). At summary judgment, all facts and inferences must be construed in the light most favorable to the non-movant. Id. Summary judgment is only appropriate if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Id.

### A. Motivation to Combine

The first issue before us is whether the district court erred in holding that a skilled artisan would not have perceived any reason to combine the Sweeney reference with the locating sleeve of the PCF. The Supreme Court recently explained that "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727, 1741 (2007). "[I]t can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." Id. In identifying such a "reason," the Court cautioned that "the analysis need not seek out precise teachings [in the prior art] directed to the specific subject matter of the challenged claim." Id.; see also DyStar

Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co., 464 F.3d 1356, 1366 (Fed. Cir. 2006) ("[W]e have stated explicitly that evidence of a motivation to combine need not be found in the prior art themselves," citing In re Dembiczak, 175 F.3d 994, 999 (Fed. Cir. 1999)) (emphasis in original). Rather, courts must also "look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art." KSR Int'l, 127 S. Ct. at 1740-41; see also DyStar, 464 F.3d at 1366-67 (holding that a reason to combine may come from "the knowledge of one of ordinary skill in the art," "the nature of the problem to be solved," or "common knowledge and common sense") (internal quotations and citations omitted).

Parker proffered an expert, David Geary, who attested that a skilled artisan would have recognized the importance of proper alignment in practicing the Sweeney patent and thus would have thought of adding a locating sleeve. But the district court erroneously gave no probative weight to this expert evidence.[3] While OFI offered contrary evidence from its own expert, Parker's expert evidence cannot simply be disregarded at summary judgment given that Parker was the non-movant. Further, while the district court ostensibly looked beyond merely the prior art for a reason to add a locating sleeve to Sweeney by also examining the nature of the problem, the court's analysis was too narrow in scope and failed to account for evidence regarding the knowledge of a skilled artisan. The Geary evidence certainly raises a genuine issue of

---

[3]     The district court did cite Geary as acknowledging that the Sweeney patent did not itself indicate a need for any modification to address alignment problems. But this is irrelevant given Geary's view that a skilled artisan would have recognized such a need from his own knowledge rather than from the Sweeney patent.

material fact as to whether a person of ordinary skill in the art would have had reason to add the PCF's locating sleeve to the Sweeney fitting.

## B.        Reasonable Expectation of Success

The district court's holding that a skilled artisan would not have had a reasonable expectation of success in combining the Sweeney patent with a locating sleeve is based almost entirely on the deposition testimony of John Greco, a Parker employee during the development of the original FastMate fitting.  Greco testified that Parker had even considered incorporating a locating sleeve in the FastMate fitting at that time, but the decision was made to omit the sleeve because of the heightened costs of manufacturing a fitting with a locating sleeve and the "small amount of flow restriction" that the sleeve would cause.  J.A. at 1162.  Thus, the argument goes, skilled artisans like Parker's engineers did not believe adding a sleeve would be successful.

Parker's counterevidence is again the statements of its expert, Geary, who avers that the use of locating sleeves was well-known in the field generally, and that a person of ordinary skill in the art would expect a reasonable probability of success that adding such a sleeve to the Sweeney fitting would solve its alignment problems.  In support, Geary cites a plethora of prior art references that demonstrate the success of locating sleeves in solving alignment problems in various related applications.

Again, the district court erroneously disregarded the non-movant's evidence in the summary judgment context.  The Geary evidence regarding reasonable expectation of success at least raises a genuine issue of material fact as to whether a skilled artisan would have held such an expectation.  Further, the district court should have construed the Greco testimony in the light most favorable to Parker.  When so construed, Greco's

testimony plainly does not evince doubt that adding a locating sleeve would succeed in effectively solving alignment problems. It does not establish, for example, that the higher cost of the fitting with a sleeve was prohibitively high, nor that the "small flow restriction" would have an inordinate impact on the overall utility of the fitting. As such, Greco's testimony does not disturb the triable issue.

### C. Secondary Indicators of Non-Obviousness

The evidence also raises factual issues regarding secondary indicators of non-obviousness that prevent summary judgment. As already discussed, Greco's testimony, when construed in the light most favorable to non-movant Parker, cannot support a finding on summary judgment that skilled artisans were skeptical of the value or feasibility of adding a locating sleeve to the Sweeney fitting, or of locating sleeves as alignment aids in general. Indeed, there is evidence from Geary and the PCF that the use of locating sleeves as alignment aids in other applications was well-established. Certainly there is at least a genuine issue of material fact as to whether such skepticism existed.

In addition, Parker's later decision to add such a sleeve to the FastMate fitting actually seems to support a finding of obviousness rather than non-obviousness. When construed in Parker's favor, the FastMate fitting's history is undisputed evidence that the idea of incorporating a locating sleeve to improve alignment capability was discussed and well within the knowledge of skilled artisans at an early stage.

Lastly, Weirauch's letter indicates that the long-felt need he had in mind was the ability to create a metal-to-metal seal without special tools. It is undisputed that both the Sweeney fitting (thus also the original FastMate fitting) and the fitting taught by the

asserted patents achieve such a seal without the need for special tools. The only difference, as both parties agree, is that in those situations where alignment is difficult to achieve, the Sweeney fitting often does not form such a seal effectively. Given that Weirauch does not mention alignment in his letter, it is difficult to ascertain whether the need he identified inherently includes a subservient need for an alignment mechanism like the locating sleeve. But there is at least a triable issue of fact as to whether there truly was a long-felt need for such a mechanism.

## CONCLUSION

Due to the existence of multiple genuine issues of material fact, the district court's grants of summary judgment are <u>reversed</u>, its grant of a permanent injunction is <u>vacated</u>, and the case is <u>remanded</u>.

## COSTS

No costs.